# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SHELLY SHARNAI KEPLEY,<br><br>                    Plaintiff,<br><br>     vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>                    Defendant. | Civil Action No.:<br><br>COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Shelly Sharnai Kepley ("Shelley" or "Plaintiff"), by and through the undersigned counsel, hereby brings this action against defendant Equifax Information Services, LLC ("Equifax" or "Defendant"), and alleges based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

## NATURE OF THE ACTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. Plaintiff was denied apartment rental, and suffered other substantial harm, because Equifax sold consumer reports (alternatively referred to as a "background report") indicating that Plaintiff had a $57,000 dollar debt in child support owing and outstanding. In truth, Plaintiff does not owe, and has never owed, any child support in the state of Texas or any other state.

2. Put simply, defendant has erroneously confused Plaintiff with a different person in what is known as a "mixed-file." A mixed-file occurs when a consumer reporting agency's loose matching procedure causes it to report one consumer as being associated with certain information belonging to a wholly different consumer.

1

3. Defendant's "mixed-file" inaccurate reporting in this case was not a fluke. Rather, it was caused by defendant's failure to devise, implement, and follow reasonable procedures to ensure the maximum possible accuracy of the information contained on Plaintiff's consumer reports.

4. Defendant intentionally employs procedures that purposefully prioritize the quantity of records reported over the accuracy of records reported.

5. Defendant's reporting of inaccurate information is not accidental, nor a result of simple negligence, but a result of deliberately designed policies and procedures.

6. Plaintiff suffered substantial actual damages as a result, and, accordingly, is entitled to damages.

## JURISDICTION AND VENUE

7. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681 *et seq*.

8. Defendant regularly transacts business within the judicial district. Defendant regularly directs business at the judicial district. Defendant voluntarily and purposefully availed itself of the protections of the judicial district, such that personal jurisdiction is established.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

10. Plaintiff is a natural person who resides in Tarrant County, Texas. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

11. Defendant Equifax regularly compiles and distributes consumer credit information in exchange for monetary compensation. Therefore, Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is a Georgia corporation that regularly conducts business

in this judicial district. Equifax maintains a principal place of business at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309. Equifax maintains a principal place of business at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

12. At all times relevant to this complaint, defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

### A. The FCRA

13. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer credit reports. Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

14. To that end, the FCRA imposes the following twin duties on consumer reporting agencies (commonly referred to as "credit bureaus" or "background check" companies): (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies or suppress the inaccurate or misleading information.

15. The FCRA provides consumers with a private right of action against consumer reporting agencies that fail to comply with their statutory obligations.

### B. Defendant's Reporting Harmed Plaintiff

16. Plaintiff works at Texas Health Resources, a large Texas healthcare company, in the capacity of an Admissions Specialist.

17. In or around February 2022, Plaintiff's father was deceased. Leading up to his passing, Plaintiff provided necessary care and support to her father. This care, including time off from work and frequent travel, strained Plaintiff's resources and caused her financial savings to be nearly depleted.

18. Plaintiff resides in Tarrant County, Texas, in an apartment rental with her boyfriend.

19. Plaintiff's apartment rental costs $1,370 dollars per month, not including utilities, which utilities, particularly the heating and electric bills, tend to be expensive due to inadequate insulation.

20. The expensive apartment rental combined with Plaintiff's precarious financial state caused Plaintiff to search for a more affordable and practical apartment rental.

21. In addition, Plaintiff expected that the change of location and apartment will provide fresh comfort, and a new beginning, which would help her find solace since her father's passing.

22. Plaintiff began her search for an apartment in May 2022, because, with her lease reaching its conclusion at the end of June 2022, Plaintiff wished to provide her landlord with 60-days of notice of lease non-renewal.

23. After considerable efforts, Plaintiff found an available apartment – a one-room unit – offered by Canopy on Central ("Canopy").

24. Canopy is a property management company in the Bedford, Texas area which offers "modern apartments" "[c]omplete with sophisticated appliances," and other amenities.[1]

25. Aside from the beautiful apartment and amenities, the Canopy apartment would cost a mere $1,290 per month inclusive of utilities and a routine "pet fee."

26. In all, therefore, Plaintiff expected that a move to the applied-for Canopy apartment would save her an estimated couple hundred dollars per month.

27. Plaintiff submitted her application for the Canopy apartment in mid-April 2022.

28. After submitting her application to Canopy, on or about April 17, 2022, Plaintiff provided 60-days notice to her landlord that she would be vacating the apartment and not renewing her lease.

29. To Plaintiff's dismay, on or about April 22, 2022, one Stephanie Bartum, a Canopy Leasing Consultant, emailed Plaintiff that her application was denied because of her "debt to income ratio" (the "Canopy Denial").

30. Plaintiff was devastated by the denial, and she embarked on a search for its cause.

31. Plaintiff soon obtained and reviewed copies of her Equifax, Experian, and Trans Union consumer reports

32. In particular, Plaintiff's Equifax consumer report indicated certain information that was inaccurate, including (i) an ATTORNEY-GENERAL CHILD SUPPORT tradeline indicating a current and outstanding balance of $57,000 dollars in outstanding child support debt (the "Child Support Debt"); (ii) an address of 13100 Stonefield Drive, Apt 107, Houston, Texas 77014; and (iii) a Bank of Missouri tradeline (Account No. ********7340, opened in February 2018).

33. The Child Support Debt does not, and never did, belong to Plaintiff.

---

[1] Canopy on Central, Floor Plans, https://www.canopyoncentral.com/floor-plans (last visited on July 12, 2022).

5

34. Plaintiff is an adult human female who has never borne any children.

35. Plaintiff does not owe, and has never owed, any child support in the state of Texas or any other state.

36. Plaintiff is also not associated with the Bank of Missouri tradeline, which does not belong to her.

37. In contrast to Equifax, a review of Plaintiff's consumer reports provided by non-parties Trans Union and Experian dated in or around May 20, 2022, demonstrated that Trans Union and Experian were not reporting the Child Support Debt or other inaccurate information.

38. On or about May 7, 2022, Plaintiff submitted a dispute to Equifax, via its website, that disputed that the Child Support Debt was related to her.

39. In addition, on or about May 8, 2022, also via Equifax's website, Plaintiff submitted a dispute to Equifax disputing its reporting of the Bank of Missouri tradeline, which was inaccurate.

40. Equifax responded to Plaintiff's dispute by letter dated May 17, 2022 (the "Equifax Results Letter").

41. However, much to Plaintiff's disappointment, instead of removing the inaccurate Child Support Debt, the Equifax Results Letter merely verified that it was accurate.

42. Plaintiff soon obtained and reviewed copies of her Equifax, Experian, and Trans Union consumer reports

43. In particular, Plaintiff's Equifax consumer report dated May 20, 2022, indicated certain information that was inaccurate, including (i) the Child Support Debt, and (ii) an address of 13100 Stonefield Drive, Apt 107, Houston, Texas 77014.

44. Thus, despite Plaintiff's disputes, Equifax was still reporting the erroneous and unrelated Child Support Debt and address.

45. Exasperated, on or about May 19, 2022, Plaintiff contacted the office of the Texas Attorney General to inquire and confirm whether it had any record of her owing any child support.

46. On the phone, a representative of the Texas Attorney General's office verified to Plaintiff that, according to the State of Texas, she did not owe any outstanding child support, and that she had never, in fact, owed any amount of child support.

47. After further inquiries, Plaintiff was advised that RealPage was the source of background and credit information that Canopy considered in evaluating Plaintiff's Canopy application and that resulted in the Canopy Denial.

48. Therefore, on or about May 26, 2022, Plaintiff requested a copy of RealPage's consumer file concerning Plaintiff (the "RealPage Report"), which Plaintiff received soon thereafter.

49. To Plaintiff's dismay, the RealPage Report, dated June 6, 2022, indicated the Child Support Debt, the inaccurate address of 13100 Stonefield Drive, Apt 107, Houston, Texas 77014, as well as other inaccurate information.

50. In addition, the RealPage Report included the following tradelines that are unrelated to Plaintiff and unrecognized by Plaintiff (the "Unrelated Tradelines"):

   i. Bank of Missouri tradeline (Account No. ********7340, opened in February 2018);
   ii. LVNV Funding LLC tradeline (Account No. ********9885, opened in September 2020);
   iii. National Credit Adjusters tradeline (Account No. ********3124, opened in September 2011); and
   iv. Sprint tradeline (Account No. ********4741, opened in June 2021).

51. The RealPage Report, in a section entitled "Consumer Inquiry Report," indicated that RealPage provided a consumer report concerning Plaintiff to Canopy on April 22, 2022, and again on April 27, 2022.

52. Upon information and belief, the Canopy Denial was based on, and in reliance on, the RealPage Report, or a similar RealPage consumer report that included the inaccurate Child Support Debt.

53. Upon information and belief, the Canopy Denial was caused by RealPage's provision and indication of the inaccurate Child Support Debt to Canopy.

54. Upon information and belief, the Canopy Denial was caused by RealPage's inaccurate inclusion of the Child Support Debt on the RealPage Report provided to Canopy.

55. Upon information and belief, the Child Support Debt, as well as the Unrelated Tradelines, which were included in the RealPage Report, were provided to Canopy by RealPage in its capacity as a reseller of consumer information and reflected the information provided to it by Equifax.

56. As a result of the Canopy Denial, Plaintiff was forced to contact her landlord and plead that her lease be renewed after all, for one more year, until the issue of Defendant's inaccurate reporting will have been corrected.

57. Ultimately, Plaintiff's landlord consented to Plaintiff's request and has renewed the lease for one additional year.

**C. Plaintiff Suffered Additional Harm**

58. From the time of the Canopy Denial until Plaintiff's lease was ultimately and reluctantly renewed, and while still holding out the hope that Equifax would speedily resolve and correct its inaccurate reporting (the "Frantic Period"), Plaintiff was severely distressed, and

Plaintiff spent an inordinate amount of time and effort, in attempting to locate alternative living arrangements, such as short-term rentals.

59. During the Frantic Period, Plaintiff knew that she had only until the end of June, 2022 to remove all her belongings from her apartment, and she also knew that she had nowhere else to go.

60. During the Frantic Period, and as a direct result of Equifax's inaccurate reporting, Plaintiff suffered significant distress and anxiety.

61. In addition, even after the Frantic Period, Defendant's reporting forced Plaintiff to desperately sign a lease for another year, which causes Plaintiff to pay additional rental and utility costs, each month, for an additional year, while she continues to reside in her old (and now current) apartment.

62. Plaintiff also intends to secure a lower interest rate on her car loan. However, she has refrained from submitting an application because of Defendant's reporting.

63. Plaintiff intends to submit an application to secure a lower interest rate on her car loan just as soon as Defendant corrects its inaccurate reporting.

64. Despite knowing that its procedures often result in inaccurate reporting, Equifax negligently, intentionally, recklessly, and knowingly fail to employ procedure to assure only maximally accurate consumer information is compiled and published in the consumer reports it sells to third parties for a profit.

65. As a direct result of Equifax's failures to report accurate information, Plaintiff suffered as described hereinabove.

66. Defendant's inaccurate reporting caused Plaintiff to be denied a new apartment rental and forced her to continue to incur the difficulties iterated hereinabove.

67. Aside from the financial losses, Plaintiff suffered emotionally.

68. Plaintiff was severely distressed by the ordeal she was put through by Equifax.

69. When Plaintiff reviewed the inaccurate Equifax consumer report in early May of 2022, Plaintiff felt frustrated and distressed by the gross inaccuracies.

70. When Plaintiff reviewed the inaccurate RealPage Report containing the inaccurate information as furnished by Equifax, Plaintiff felt frustrated and distressed by the gross inaccuracies.

71. When Plaintiff reviewed the inaccurate Equifax consumer report dated May 20. 2022, Plaintiff felt frustrated and distressed by the gross inaccuracies still remaining even after Plaintiff's dispute.

72. Equifax's actions have caused Plaintiff severe emotional distress, anxiety, and sleepless nights.

73. Plaintiff feared, and still fears, that Defendant's inaccurate reporting may be repeated by Defendant, and may continue into the future to jeopardize her ability to secure credit and apartment rentals.

74. Defendant's conduct, actions, and inaction caused Plaintiff to suffer actual damages, including, but not limited to, emotional distress which includes, mental anguish, embarrassment, stress, and anxiety.

## COUNT I
### Equifax Violated 15 U.S.C. § 1681e(b)

75. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

76. In the parlance of the FCRA, background reports are "consumer reports."

77. Under 15 U.S.C. § 1681e(b), "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

78. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report(s).

79. Equifax violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer report(s).

80. Upon information and belief, Equifax has been sued by other consumers in the past who have alleged its dispute procedures were unreasonable and violative of the FCRA.

81. Therefore, Equifax had actual notice of its deficient procedures.

82. It is wholly unreasonable to maintain procedures that allow consumer reports to reflect that a consumer was associated with a tradeline, credit account, or child support debt, when that consumer was not, in fact, associated with that tradeline, credit account, or debt.

83. Specifically, it was wholly unreasonable for Equifax to convey that Plaintiff was associated with the Child Support Debt, or the Bank of Missouri tradeline, or the unrelated address.

84. Equifax's failures to employ and/or follow reasonable procedures while preparing Plaintiff's information caused Plaintiff to suffer actual damages, including statutory and actual damages, as described herein.

85. Equifax's violations of the FCRA were intentional, were done knowingly, or at minimum were done with a reckless disregard of its duties under the FCRA.

86. Therefore, Equifax's violations of the FCRA were willful, and each is individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. See 15 U.S.C. § 1681n.

87. Alternatively, Equifax's violations of the FCRA were negligent. Therefore, Equifax is individually liable to Plaintiff for statutory and actual damages. See 15 U.S.C. § 1681o.

88. In any event, Equifax is liable for Plaintiff's reasonable attorney's fees and costs. See 15 U.S.C. §§ 1681n, 1681o.

## COUNT II
### Equifax Violated 15 U.S.C. §1681i

89. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

90. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was accurate delete the item from Plaintiff's credit files and consumer reports.

91. As more fully alleged hereinabove, Plaintiff disputed and communicated to Equifax that it was inaccurately reporting the Child Support Debt.

92. Nevertheless, Equifax continued, and continues, to report and publish the inaccurate information.

93. Equifax violated 15 U.S.C. §1681i(a)(2)(A) by failing to provide the relevant furnisher of the Child Support Debt with all of the relevant information regarding Plaintiff and their dispute.

94. Equifax violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit files or correct the inaccurate information upon reinvestigation.

95. As a result of Equifax's statutory violations, Plaintiff suffered actual damages as described hereinabove.

96. Equifax's violations were willful, rendering Equifax individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

97. In the alternative, Equifax was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

98. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## **TRIAL BY JURY**

99. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against Defendant for the following:

a) Actual damages pursuant to 15 U.S.C. §§ 1681n-o;

b) Statutory damages pursuant to 15 U.S.C. §§ 1681n-o;

c) Punitive damages pursuant to 15 U.S.C. § 1681n;

d) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n-o;

e) Any pre-judgment and post-judgment interest as may be allowed under the law; and

f) Other and further relief as the Court may deem just and proper.

DATED: August 19, 2022,

        */s/ Kendra Penningroth*
        Kendra Penningroth
        Arizona Bar No.: 037119
        **The Consumer Justice Law Firm**
        8245 N. 85th Way
        Scottsdale, AZ 85258
        T: (480) 626-1447
        E: kpenningroth@cjl.law

        Roger L. Mandel
        Texas Bar No.: 12891750
        **Jeeves Mandel Law Group, P.C.**
        2833 Crockett Street, Suite 135
        Fort Worth, TX 76107
        T: (214) 253-8300
        F: (727) 822-1499
        E: rmandel@jeevesmandellawgroup.com

        Levi Y. Eidelman (*Pro Hac Vice Forthcoming*)
        New York Bar No.: 5742499
        **The Consumer Justice Law Firm**
        300 Cadman Plaza West, 12th Floor, Ste. 12040
        Brooklyn, NY 11201
        T: (718) 360-0763
        E: leidelman@cjl.law

        *Attorneys for Plaintiff*